UNITED STATES DISTRICT COURT

FOR THE DISTRICT OF IDAHO

| | |
|---|---|
| UNITED STATES OF AMERICA,<br><br>    Plaintiff,<br><br>    v.<br><br>PAVEL BABICHENKO,<br>GENNADY BABITCHENKO,<br>PIOTR BABICHENKO,<br>TIMOFEY BABICHENKO,<br>KRISTINA BABICHENKO,<br>NATALYA BABICHENKO,<br>DAVID BIBIKOV,<br>ANNA IYERUSALIMETS,<br>MIKHAIL IYERUSALIMETS,<br>ARTUR PUPKO,<br><br>    Defendants. | Case No. 1:18-cr-00258-BLW<br><br>**MEMORANDUM DECISION AND ORDER** |

## INTRODUCTION

Before the Court is Defendant Anna Iyerusalimets's Motion Compel Independent Defense Expert Review of Physical Evidence. Dkt. 423. For the reasons explained below, the Court will grant the motion.

## BACKGROUND

Defendant Anna Iyerusalimets and nine others were indicted for allegedly

engaging in a decade-long scheme to sell counterfeit smartphones. Dkt. 1. The superseding indictment includes both conspiracy and substantive charges. Dkt. 201. All the substantive counts (other than those regarding money laundering) are based on physical evidence – primarily cell phones and accessories. Dkt. 465 at 12.

The defendants retained independent experts to examine the physical evidence. Dkt. 423 at 3. The Defense requested the evidence be sent North Carolina, where their experts are located. Dkt. 465-1 at 8. In early December 2019, the Government agreed to send all items seized from the undercover purchases and search warrants (more than 2,400 items in total) to the FBI office in Raleigh, North Carolina. Dkt. 423 at 5. The Government insisted on having an agent present during the inspections, against the Defense's objections. Dkt. 423 at 5-6. Shortly thereafter, the Government informed the Defense that they were unable to send all 2,400 items (weighing over 750 pounds) because the FBI office in Raleigh did not have enough room to store the evidence. Dkt. 465-1 at 5. Further, the Government was unable to send the batteries because of federal regulations limiting their shipment. *Id.* Instead, the Government agreed to send a sample of approximately 115 phones. *Id.*

The Defense received only 37 phones. Dkt. 423 at 7. The Government admitted to mistakenly withholding six packages of items received from the

**MEMORANDUM DECISION AND ORDER - 2**

undercover hand-to-hand purchases (41 phones total). Dkt. 465-1 at 2. A few weeks later, the Government sent 7 phones from the hand-to-hand purchases for the Defense's unmonitored review. Dkt. 423 at 9.

The Defense's expert inspections of this evidence were monitored by Agent Sheehan. Dkt. 423 at 9. Agent Sheehan asked the experts questions during their inspection and filed a report thereafter. *See* Dkt. 492-1. Throughout this process, the Government maintains the entirety of the evidence has been available for monitored inspection in Boise, Idaho. Dkt. 465 at 2.

## LEGAL STANDARD

The government must allow the defense to inspect tangible items "if the item is within the government's possession, custody, or control" and either "the item is material to preparing the defense," "the government intends to use the item in its case-in-chief," or "the item was obtained from or belongs to the defendant." Fed. R. Crim. P. 16(a)(1)(e). If the government fails to comply with this rule, a court may "order that party to permit the discovery or inspection; specify its time, place, and manner; and prescribe other just terms and conditions." Fed. R. Crim. P. 16(d)(2).

Unless the court requires notice, a criminal defendant is "entitled to remain silent as to what defense he will present." *United States v. Hernandez-Meza*, 720

**MEMORANDUM DECISION AND ORDER - 3**

F.3d 760, 765 (9th Cir. 2013). The work-product doctrine, which applies to both civil and criminal proceedings, protects this right by "providing a privileged area within which [the attorney] can analyze and prepare his client's case." *United States v. Nobles*, 422 U.S. 225, 238 (1975). Because attorneys often rely on "investigators and other agents" to prepare materials for trial, the work-product doctrine also protects material produced by the attorney's agents. *Id.* at 238-39.

## ANALYSIS

The Defense argues (1) the Government should allow their experts to review the evidence in Boise outside the presence of an FBI Agent and (2) the Government's failure to ship the entirety of the evidence to the Defense's experts in North Carolina amounts to bad faith. *See* Dkt. 423.

### A.     Government Monitoring of the Defense's Expert Inspection

The Defense argues their experts should be able to review the entirety of the evidence outside the presence of an FBI agent. *See* Dkt. 423. Throughout this dispute, the Government has made the evidence available for the Defense's review in Boise, Idaho. Dkt. 465 at 12; Dkt. 465-1 at 5. The Government, however, argues the Defense is not entitled to an unmonitored review of the evidence because of its delicate and volatile nature. Dkt. 465 at 12.

Two areas of criminal prosecution provide guidance for this evidentiary

**MEMORANDUM DECISION AND ORDER - 4**

issue: illegal drugs and child pornography. In a criminal prosecution regarding illegal drugs, courts balance the defendant's due process right to test the evidence with the prosecution's desire to preserve its integrity. In these cases, often the entirety of the evidence supporting the charge is the substance and quantity of the illegal drug. Therefore, courts hold the government's interest in protecting the evidence outweighs the defense's interest in unfettered access to it. *See United States v. Reed*, No. 1:04-CR-139, 2005 WL 1828737 (E.D. Tenn. Aug. 1, 2005) (allowing the defense to independently examine and test the alleged marijuana, but only in the presence of law enforcement to preserve the chain of custody and the admissibility of the evidence); *United States v. Pollock*, 402 F. Supp. 1310 (D. Mass. 1975) (giving the government the option to have an agent accompany the drug sample while in the defense's possession).

In a criminal proceeding regarding child pornography, courts similarly balance the need to protect the evidence with the defense's interest in inspecting it. *See* 18 U.S.C. § 3509(m). Tied to the defense's interest in inspecting the evidence is their ability to do so without the risk of accidentally exposing their defense or trial strategy to the government. *See United States v. Flinn*, 521 F. Supp. 2d 1097, 1100 (E.D. Cal. 2007). In child pornography cases, courts balance this interest with the sensitive nature of the evidence by requiring the government to provide the

**MEMORANDUM DECISION AND ORDER - 5**

defense with an "ample opportunity" to examine the evidence "in a situation where attorney-client privilege and work product will not be easily, accidentally exposed to the government." *Id.* at 1101. Thus, the defense's interest in confidentiality outweighs the government's interest in completely protecting the evidence. Courts strike a balance by allowing the defense an unmonitored review of the evidence within a government facility, but prohibiting copying or removing the evidence from the government's possession. *See United States v. O'Rourke*, 470 F. Supp. 2d 1049 (D. Ariz. 2007) (holding the government sufficiently provided the defense with ample opportunity to review the evidence by permitting the experts to privately review the evidence in a government facility).

Here, there exists a need to balance the Defense's interest in privately inspecting the cellphones with the government's interest in protecting the evidence. Like an illegal drug prosecution, the evidence underlying the substantive counts is the evidence at issue – the cellphones, batteries, and accessories. Dkt. 465 at 12. However, unlike a drug prosecution, the specific quantity of the evidence is not at stake. Rather, the Government possesses more than 2,400 pieces of evidence for this case. *Id.* at 11. Therefore, the need for an agent to accompany and protect the evidence during inspection is entitled to less weight than it would in the case of a drug prosecution.

**MEMORANDUM DECISION AND ORDER - 6**

Like in child pornography prosecutions, the Defense has a significant interest in maintaining the confidentiality of their work product. The Government argues Agent Sheehan was only present to ensure the evidence was "not damaged or altered." Dkt. 645 at 12. However, Agent Sheehan filed a report with the FBI in which he describes the way the experts inspected the phones, notes they refrained from inspecting the batteries and accessories, and includes quotes of findings the experts apparently made during their inspection. Dkt. 492-1. This may have been an innocent attempt to monitor the experts' handling of the phones to ensure that their physical integrity was maintained. But, even so, it infringes on the Defense's right to conceal their work product and any defense they intend to make at trial. Further, any contention that the Defense's experts will somehow tamper or destroy the evidence is without merit. The Government previously sent samples of the evidence to Samsung's lab in Dallas for testing, apparently without the supervision of an agent. Dkt. 423 at 8.

The Government argues the principles guiding the examination of child pornography evidence do not apply here because those cases involved the "forensic" examination of the hard drives containing the evidence. Dkt. 465 at 13. They argue that here, the cell phones are treated as tangible physical evidence, and a forensic examination would be unnecessary and potentially harmful. *Id.* (noting

**MEMORANDUM DECISION AND ORDER - 7**

that plugging the phones in could cause them to catch fire). However, the procedures created in the child pornography cases do not stem from the forensic nature of the examinations, but rather the sensitive nature of the evidence. *See O'Rourke*, 470 F. Supp. 2d at 1054-59. Moreover, the Defense does not argue that any potentially damaging forensic examination of the phones is required. For these reasons, the Court finds the Defense's interests in inspecting the evidence outside of the presence of a government agent outweigh the Government's interest in preservation of the evidence.

### B. Bad Faith by the Government

The Defense argues the Government violated Rule 16 of the Federal Rules of Criminal Procedure and acted in bad faith by failing to send the entirety of the evidence to the Defense's experts in North Carolina. However, "non-compliance with Rule 16 does not amount to a due process violation absent bad faith." *United States v. Zaragoza-Moreira*, 780 F.3d 971, 981 (9th Cir. 2015). Moreover, the Government did comply with Rule 16 by making the entirety of the evidence available for review in Boise, Idaho. Dkt. 465 at 2; Dkt. 465-1 at 5; Dkt. 465-1 at 8.

In seeking to further accommodate the experts chosen by the Defense, the Government agreed to ship the evidence (weighing over 750 pounds) to North

**MEMORANDUM DECISION AND ORDER - 8**

Carolina. Dkt. 423 at 6. Only upon realizing the lack of capacity at the Raleigh FBI facility did the Government inform the Defense that it could only send samples of the evidence. Dkt. 465-1 at 6. The Government's mistake in forgetting to send the phones received in hand-to-hand purchases is an oversight that does not amount to bad faith. *See* Dkt. 465-1 at 2. Finally, the Government was unable to ship the batteries because of the federal regulations regarding their transport. Dkt. 465-1 at 6; 49 C.F.R. § 173.185. Considering the foregoing, the Court finds that the Government's actions do not amount to bad faith.

The Defense also argues that the Government's system of numbering the evidence constitutes bad faith. Dkt. 423 at 17-18. However, it is inevitable that a case of this magnitude will require complicated methods of evidence identification. Moreover, at the Defense's request, the Government emailed a list of the numbered evidence sent to the North Carolina office. Dkt. 465-1 at 2-3. The Government's failure to conveniently organize the evidence in a way most convenient to the Defense does not amount to bad faith. *See, e.g.*, *Arizona v. Youngblood*, 488 U.S. 51 (1988) (holding the police's failure to preserve potentially useful evidence did not amount to bad faith); *Cf. Zaragoza-Moreira*, 780 F.3d at 980 (finding bad faith where the agent consciously suppressed exculpatory evidence).

**MEMORANDUM DECISION AND ORDER - 9**

# CONCLUSION

The Court finds the Defense is entitled to an unmonitored review of the entirety of the evidence within the Government's facility in Boise, Idaho. Because the Government has consistently maintained the Defense's right to access the evidence in Boise throughout this proceeding, the Court finds no bad faith on the part of the Government. The Government must continue to make the evidence available for the Defense's review in Boise, Idaho and must allow the Defense to examine the evidence outside the presence of an FBI agent.

# ORDER

**IT IS ORDERED that:**

1. Defendant's Motion to Compel (Dkt. 423) is **GRANTED**, as detailed in this decision. The Government shall permit the Defense experts to examine the evidence in Boise, Idaho, outside the presence of any FBI agent or government representative.

DATED: July 8, 2020

B. Lynn Winmill
U.S. District Court Judge